Mr. Coleman, whenever you're ready. Thank you, Your Honor. Good morning, Ben Coleman from Ms. Bear. What I'd like to do is start off with the second issue raised in the brief and then move back to the first issue. And you said I have time. I'll try to get this on the other ones. But starting off with the second issue, I think that there is a smoking gun, for lack of a better term, as to this issue, which the government did not address in their response brief, and I'm interested to hear whether they have a response today. And that is that Detective Hager was not put on the witness list that the government gave to Judge Collins during the ward year to read to all the potential jurors, to inform the jurors as to who the potential witnesses in the case were. If the government, as they're now maintaining and as they maintained in the trial, if Hager was to be a potential rebuttal witness, that they had reserved the right to call him a rebuttal, they had an absolute duty to inform the district court that, to put him on the witness list and to give his name to the district court so that the district court could inform the potential jurors that he may be a potential witness so that the court could find out whether anybody knew him. The government did not do that, and I think that's the smoking gun. That is the piece of evidence that reveals that this issue, that they reserved the right to call Detective Hager in their case in chief. The first time this ever came up was after the trial had started. And if you look at the record of the stipulation that was presented to the district court before trial, there was no mention of a case-in-chief limitation. The defense attorney said the stipulation is that Hager will not be called as a witness. The government did not step up. They had two prosecutors there. Neither of them stepped up and said, Your Honor, there is one caveat, there is one limitation, and we reserve the right to call him in rebuttal. Counsel, you did not give 12.3 notice here, did you? There was no written notice under Rule 12.3, but there was oral notice given at a pretrial conference held one month. I wasn't the trial lawyer, by the way, but one month before the trial, the defense attorney specifically told the government that his defense was going to be a public authority defense and that the basis for the defense was Ms. Baer's conversation with Detective Hager. I'm sorry, what day was the oral notice given? The oral notice was given, if I could just go back to my briefs, I don't remember the exact date. It's January 12, 2003. And was that before or after the government indicated that Hager would not be called? It was before. After that hearing, that hearing was on January 12, 2003. At a subsequent hearing, maybe a week or two later, and I could give you the exact date, the defense attorney said, we've reached a stipulation with the government. They're not going to call Detective Hager as a witness, and therefore I'm not going to seek to get his personnel file. That was after he gave that notice, after the January 12, 2003 hearing. So the government had complete notice of the defense and Hager's role in it. And the first time that the government has ever pointed to Rule 12.3 is on appeal. Never once in the trial did the government say, Your Honor, we should be relieved from the stipulation because we didn't get Rule 12.3 noticed. They never said that once. The only time Rule 12.3 has ever been mentioned is on appeal, and it's a last-ditch effort for the government to try to get themselves out of the problem that they created. Now, based on Shapiro, it's clear the stipulation was violated, and the remedy is a reversal for a new trial where Hager's testimony will be excluded. That's very clear from this Court's precedent in Shapiro. And based on that alone, I think the Court should reverse for a new trial. But you better make another point. You shouldn't rely too heavily on that. Because there might be some disagreement with you on that point and on the importance of that point. Well, I'm interested to hear what the government's response would be. Well, I think they might suggest that later on, at least two times as I read the record, the government clarified that they were not going to call Hager in their case-in-chief and that they had spoken with the defense counsel about this. And defense counsel didn't say anything different from that as I read the record. And that happened twice. Well, after the trial had started was the first time that the government mentioned that they had this special case-in-chief limitation. The defense attorney disputed that. At the time of the trial, when Hager was called, the defense attorney objected. No, no, no, no, no, no. But before that, when there was some conference with the court, as I read the record, and the government represented that they had spoken to the defense and that Hager was not going to be called in their case-in-chief, and the defense didn't say anything different about that qualification. I believe the defense attorney did. I mean, there was a lot of discussion back and forth after the trial started. The government – I recognize on several occasions the process. You may want to point us to the record, though, where it took place. I can – it's set forth in the sort of the procedural history after this claim, but the – Well, the government will tell us, I'm sure. I'm sure they will. But the – what happens is this discussion goes on throughout the trial, and every time the government says, we reserve the right to call him the case-in-chief, obviously the first time they ever mentioned that was after the trial started, the defense attorney would say – would object, I don't think Hager should be called. Before Hager was called as a witness, he laid a specific objection that there was a stipulation that he wasn't going to be called. I just didn't read the record that way, but I'll read it again. Before Hager was called, the defense attorney laid out a long objection saying, my understanding was that he was not going to be called as a witness, period. Well, that's true. At that time he did, and the court said, no, the stipulation was that he wouldn't be called as the case-in-chief, and they let him testify. Isn't that what happened? That's what the district court held. It is. My argument, number one, is that that issue is subject to de novo review, so there's no deference to the district court's finding on that. Okay. Number two is that what the court needs to look at is what was the – what is the on-the-record indication at the time that the trial began? I mean, the government can come in after the fact and claim case-in-chief, case-in-chief, but there's been no sworn testimony that there was some side deal that he could be called in the case-in-chief. The record speaks for itself as to what the stipulation was. It was put on the record. If there was some special limitation under this Court's case law, the government had the burden to unambiguously – that's the language that's used in Shapiro and the other cases – they had the burden to unambiguously set forth that limitation, and they did not do so. They did not meet their burden. And so to the extent that this Court even has a question, and I don't think that there really is a legitimate question, but to the extent that the Court even has a doubt under Lubin, which is a case from this Court, it's an old case, but it's a case from this Court, any ambiguity in the stipulation has to be construed in favor of the defendant. So that's under Lubin as well. So I don't think that there's a – there's a dispute here, but to the extent that there is some ambiguity, the Court has to defer – construe the stipulation in favor of the defendant in this fair. If there are no other questions on that issue, I'll proceed – I'll jump back to my first issue, which was the lack of a public authority instruction. This issue – I think that there's a case that's similar, although there's obviously one big distinguishing factor. The Burt case, which just came out recently, and we 20-HA'd that case, is very similar. Obviously, the big difference is that we're here under plain error review, whereas in the Burt case, the public authority instruction was requested. However, I don't think that that should change the analysis at all. In particular, it seems to me fairly clear that the public authority defense was presented by Ms. Bair. The public authority instruction has been on the books for years. It's a patterned Ninth Circuit instruction that's been on the books for years, and it's based on cases that have existed for years. In fact, Your Honor, Judge Thompson wrote the Davis case several years before this case was even tried. So the public authority instruction was a well-known instruction. I think it was certainly error not to give it, and that was plain error. It was obvious error based on the fact that there is a patterned instruction and that this case law is well settled. So I think the question then comes down to the third and fourth prongs of the plain error test, which is are substantial rights affected, and should the court notice the plain error? Mr. Coleman, were you the trial lawyer? I was not the trial lawyer. Okay. But do you have any reason why the defense didn't ask for that instruction? I don't. Okay. All right. You've answered the question. Okay. It clearly should have been asked for. This is the heart of the defense. Any competent defense attorney knows that you want an instruction on your defense, your theory of defense. So I don't know why it wasn't asked for. But that's why in plain error situations, it's – there is a duty of the district court to catch these plain errors and to instruct the jury as to this defense. Do you have any case, Mr. Coleman, that indicates that the failure to give a jury instructions is plain error? Where's the duty for the district court to make up for counsel's failure to request instructions on defenses that need to be noticed specifically? This kind of goes back to my 12.3 question, because it seems to me that if we get the 12.3 notice, that a lot of things get cured here. The government has no defense whatsoever to not explaining why it may need to call notice, and the court has no excuse for not giving the – for not giving the instruction. So it seems to me that you haven't crossed a bridge that – that you haven't jumped through a hoop that might have put both the government and the court on notice, and now you're here arguing that both of them made mistakes. Well, the first point is that I believe there was notice. I mean, in what – Rule 12.3, I agree, says written notice, and it wasn't in writing. But as plain as day, at a hearing held one month before the trial, the defense attorney said, my client was acting as an informant. Her – the entire basis of the defense in this case is based on her acting as an informant in our conversations with Detective Hager. She said it – he said it as plain as day. The government was on notice, and the prosecutor even said, after he gave that notice, at the same hearing, the prosecutor said, well, I understand that the defense is going to be that Ms. Baer believes she was acting as an informant. I don't think that's a very good defense. I don't think, you know, factually they're going to win on that defense. But if they want to present that defense, they can go ahead and present the defense. I mean, the prosecutor, he was on actual notice. I mean, the point of Rule 12.3 is that the government had, number one, notice of the defense, and number two, who is the agent that supposedly authorized this conduct? You know, it may be the hole in your plain error argument, though. The evidence has to suggest the defense, not the argument of counsel. If the court is instructing, the court instructs on the basis of what has come – what the jury is going to have to decide based on what has been presented, not on some argument that counsel may have had at some earlier date. And is there enough in here to suggest that that kind of instruction should have been given? And I think somebody could disagree on that point. Well, the government may disagree now, but I'll – I don't mean the government. I mean reasonable minds. And if reasonable minds can disagree, you've got an uphill battle on the plain error. Well, let me explain why reasonable minds could not disagree as to that. Point number one is Ms. Bair testified and provided extensive testimony as to her public authority defense. So there were sufficient facts established by her testimony. Point number two, in the government's closing argument, the government conceded that if the jury believed Ms. Hager, they specifically said, if you – I mean, Ms. Hager, if you believe Ms. Bair, you should acquit her. The government conceded that there was sufficient evidence presented by Ms. Bair to assert a public authority defense. They actually conceded it in their closing. So those two points, reasonable minds could not disagree on that. The third point is that in Burt, which is the recent case that just came out from this Court just a couple of months ago, the factual basis for the public authority defense in that case was much weaker than the factual basis that was asserted here. I mean, Ms. Bair was working as an informant. It's undisputed. She engaged in two controlled trials. She was also working as an informant. Well, it's our position she was working as an informant. She was doing a pretty good business, as you know. And I smile because you might have been a good trial person if you had represented her then. But we've got a record, and that record shows that she was doing a pretty good business. Well, let me suggest this. If she was doing such a good business, she wouldn't have been homeless. So it wasn't like this woman was raking in the money and had some, you know, was living the life of a high-flying drug dealer. Well, I don't know. And we aren't going to add to the record. We're going to decide. You can rely on that. Well, I believe it's in the record that she was homeless. So I don't believe that... No, I don't mean homeless can add to your ability to do what you need to do if it does. We're not going to make those kinds of decisions. That's what a trier fact would do. Right. And the point of this fact here is the trier fact never got to do that because he never got a public authority instruction. And that's the whole problem here. And... I think you were going to get to your third point, which was... Oh, it was Burt. Yeah. Burt, in the Burt case, the factual basis for the public authority defense was much weaker than the factual basis for the public authority defense here. And let me just read just the brief factual scenario that's set forth in Burt. From one point, the defendant, Burt, comes to meet with the agents after she's arrested. And this is the testimony from the agent. This is the court reporting the testimony from the agent. Agent Scott contends he told Burt that she was not a confidential informant, that she should not do anything illegal, and that she should contact him with any information. Burt claims that the agents instructed her to get information and told her not to do anything illegal. Burt contends, however, that the agents told her that she would not be doing anything illegal as long as she was gathering information for the agents. Burt never contacted the agents after the interview. This is the defendant admitting that the agents told her not to do anything illegal. The agents are saying to Burt, you are not a confidential informant, and under these facts, this court held that the district court was required to give a public authority instruction. Now, these facts are significantly weaker than the facts that we have here. We have Ms. Baer, who has done two controlled buys for the government. She has met on numerous occasions for proffer sessions with various government officials, including Deputy Hager. And she testifies that during this five-day window in March of 2001, that she was in communication with Deputy Hager and explaining to him that she was setting Chapman up in a bigger deal. Now, of course, Chapman was the target that she had initially worked for the government to set up in the first place. I mean, these are strong public authority facts, certainly much stronger than Burt. So if a public authority instruction was required to be given in Burt, it certainly was required in this particular case. Okay. Now, the prosecution says that they told the jury, if you believe her, you don't believe Hager, you believe her, acquit her. Correct. Now, why doesn't that take the place of the public authority instruction? What does the public authority instruction insert beyond that? Well, we cited Vallejo as to this point. And let me just, rather than just saying the case name, let me just get a couple of points of Vallejo. Number one is that the district court also instructed the jurors, arguments of counsel, statements of counsel are not evidence. You must follow the law as I give it to you. You cannot, just because a lawyer says something that that's the law, you cannot listen to the lawyers. You know, all those typical instructions that are always given in cases were given to this particular jury. And this court in Vallejo specifically made it clear that stipulations by parties do not create the law for the jury to decide. They need to be accurately instructed on the law. So the fact that the government got up in closing and conceded, they did concede that she at least established a sufficient basis for public authority. They didn't think that she was telling the truth, but they agree that her testimony at least established the basis. The fact that they made that argument does not circumvent all the specific instructions of the public authority. Well, let me get a little more specific perhaps. Suppose the jury was to say, you know, we don't believe that Hager told her these things. Therefore, we're going to convict her. And you're saying, but had the public authority instruction been given, the public authority instruction would have said that if she reasonably believes or something like that, that she had authority, that's good enough for an acquittal. Is that right? That's correct. And I think I understand where Your Honor is going. The problem is that we don't know whether the jury convicted her because they didn't believe her or whether they convicted her. I'm only getting to the point as to whether the government's admonition and argument was sufficient. It wasn't sufficient because the jury could say, okay, the government is saying if we believe her, we should acquit her. But the judge has instructed us that we have to follow the law as the judge has given it to us. And the law that the judge gave to them was her, whether she thought she was doing something illegal or not, does not matter. The judge never instructed her, the jurors, on a public authority instruction. So if I'm a juror and I receive these instructions and we're sitting there having our deliberations, I say, well, yeah, you know, the prosecutor said we should acquit her if we believe her, and I kind of believe her, but the judge right here said we can't listen to the prosecutor. We have to follow the law that the judge gave us, and the law does not allow her to be acquitted based on public authority. Okay. So what I'd like to do is save the remaining two minutes for rebuttal. But on those two issues alone, we believe that there should be reversal. If it comes down for sentencing, clearly under amnesty she should get a limited remand, but given the facts of this case, the judge herself said on the record that she thought the sentence of essentially 20 years was exceedingly harsh for this young woman. Okay. Thank you, counsel. Ms. Ryan. May it please the Court. Shannon Ryan for the United States. Addressing counsel's arguments in the order presented, first with respect to the issue of calling Deputy Hager in rebuttal. The government raises two points primarily on this issue. First of all, with respect to what were the statements by the government. Defendant characterizes them as a stipulation not to call Deputy Hager, and while admittedly, I mean beyond a doubt, the government did not make the record clear. On the other hand, the record falls short of establishing any such stipulation for reasons that I'll address shortly. And secondly, whatever the party statements or agreements or stipulations, was the district court in error in permitting Hager to testify in rebuttal? And first, with respect to what were the statements or representations. And Your Honor had specific questions about what the record reveals. The record reveals the following. The first statement by the prosecution concerning Deputy Hager came well before any suggestion by defendant that she claimed authorization in this case. Defendant was arrested. She was asked, did any of these agents authorize your activities? No, no, no. Defendant went to a proper session with her attorney. No claim of authority or believed authority was ever raised. The month before the trial, the prosecutor is informed of the internal affairs investigation of Deputy Hager involving an entirely separate matter. The prosecutor discloses that in the January 7th, 03 letter to all of the defense attorneys. At this point, there were six defendants in the case. Defendant Baer arguably being the most, the least involved. The other defendants pleaded guilty prior to trial, and Defendant Baer proceeded to trial. At the time of the January 7th letter, the prosecutor says the government does not intend on calling him, Hager, as a witness at trial. That's the defendant's excerpt of Record 37. After that disclosure of the internal affairs investigation regarding Deputy Hager and those allegations, at the next status conference, defense counsel says on January 13th, oh, by the way, our entire defense is based upon this deputy. And at that time, he does not say he's calling the defendant. At that time, defense counsel says that she plans to subpoena Deputy Hager to her case. That's the defendant's excerpt of Record 47. The government counsel reiterates at that point the government does not plan on calling him as a witness in our case. That's the defendant's excerpt of Record 43. So at that stage of the proceeding, we have this internal affairs investigation which has come to light. The government says we don't plan on calling this individual. The testimony he would provide, as the government later explained, is essentially duplicative of other witnesses. And the defendant says, oh, let me seize on this. I will call Deputy Hager. By the way, I'm going to claim that my defense is based on conversations with him. Never again saying public authority, although the prosecutor says, well, I understand she's going to claim some sort of authorization or something. This is the first we've heard of it. There's nothing in the record to support it. Then, at a later status conference, January 27th, the next status conference of the parties, defense counsel says, and this is after he's requested a continuance of the trial date both to subpoena the internal affairs files and to subpoena Deputy Hager. At the next status conference, he says, subpoenaing the files is not necessary. We're not going to pursue that line if this agreement that I understand isn't put on the record. That's at defense excerpt of record 54. And the parties never follow up with anything on the record. Admittedly, a failure of the government. The next time that this issue is addressed on the record is during the first day of trial. And following opening statement at which defense counsel refers to Deputy Hager and his termination, the government states, and this is before defendant testifies, this is before any other evidence is adduced. This is immediately after opening statement at the first adjournment. The government states, I have previously discussed with defense counsel the fact that the government does not intend to call Deputy Hager in its case in chief. Perhaps something in defendant's cross-examination, as I have already discussed with defense counsel, may raise an issue in the government's rebuttal case. That's at the reporter's transcript of the first day of trial, 61 to 62. Defense counsel did not dispute that. Defense counsel did not dispute that there were off-the-record discussions prior to trial in which the government expressly stated this limitation. And defendant chides the government in her reply brief for, I believe the phrase defendant uses, playing it cute, playing it cute as to what these off-the-record discussions are. The government does not play it cute. As a primary matter, this Court is restricted to what the record is, and the government fell short of establishing the clear record that it should have established. But the record that is before this Court, in particular those comments on the first day of trial, which go completely unrefuted by the defense until later in the trial when the issue is brought up again and again, those comments on the first day of trial confirm that the parties' discussions involved this express limitation. Counsel, I'm looking at the January 7th letter in which they disclosed the information about the investigation of Deputy Hager. And in that first paragraph it says, however, the government does not intend on calling him as a witness at trial. Was there any other time at which the government committed in writing that it was not going to be calling Hager? No. You never had a sort of a written stipulation to witnesses that would or would not be called? That's correct. Okay. Is there anything more formal on the record that might be before the district court so it was placed into a transcript where the government said we're not going to call Hager, in which it didn't qualify it by saying in our case in chief? There is nothing more formal on the record. As I said, following that letter, there is another statement at a status conference wherein the government says the government does not plan on calling him as a witness in our case. And that's ambiguous. That does not contain an express limitation. So if the court is asking if there's any other representations or statements upon which the defendant may have relied, there is. And there's that additional statement at the status conference. And then following that at another status conference is when defense counsel invites the stipulation to be put on the record. I will not subpoena these IA files if this stipulation is put on the record. I'm paraphrasing. And nothing is put on the record. So we have the statement in the letter by the government. We have another statement at a status conference. The government does not plan on calling him as a witness. We have the defense's invitation to put a stipulation on the record. Nothing is done. And then we have, after opening statement, government counsel's explanation of, we had clear discussions prior to trial. They involved an express limitation as to case in chief. And those discussions, which are on the record before the district court, defense counsel does not dispute. And so based on those facts, the government submits that there was no stipulation concerning the government's rebuttal case. And that stands to reason, given that the government cannot anticipate fully what a defendant will say or what evidence a defendant may present until the defendant's case. That is inherently the nature of a rebuttal case. Counsel, again, the January 7th letter is the one in which the government says it doesn't intend to call Hager. So the government's position is the first time that you heard that there might be a public authority defense was January 13th, is that correct? That's correct. Although the government would say that it falls short of that, for reasons I'll discuss regarding the public authority jury instruction. The first time the government was on notice that any issue concerning Hager or any issue regarding apparent authority was discussed was at that January 13th status conference. What's the government's position? Let's suppose that we thought that the January 7th letter was a sufficient stipulation by the government that it would not be calling Hager. Would that bind the government if there's a development such as the defense announcing a new defense that the government hadn't anticipated? What does the government have to do to get out of a stipulation like that once it's made it? Well, the standard is very, very high for the government to be relieved from a stipulation. And in this case, the government would suggest that the more appropriate inquiry is not whether to relieve the government of its obligations. If this Court were to find that the government obligated itself, the government is obligated. The government submits that at that point the question is, defendant's position is she reasonably relied on these statements, on this agreement, what she terms as stipulation. She reasonably relied. And the way in which she reasonably relied was she did not pursue subpoena of the IA files. The record shows that that reliance, in fact, did not occur. That defendant did not rely on any statements of the government regarding Hager in not subpoenaing the IA files. And the reason the record is clear in that regard is because the district court, and this is during the trial at Reporters Transcript 128 and 133 to 34. The district court during trial, as this became more developed as an issue, the district court ruled that it agreed with the government that there was no limitation on its rebuttal case. The statements or representations only went to the government's case in chief. The government, the district court ruled in that regard prior to defendant testifying and said expressly to defense counsel, do you want to recess the trial? And then later on in that same discussion, the district court said, you may subpoena the IA files. You may subpoena the sergeant who conducted this investigation, who is aware of all of the facts, who gave the information to the prosecutor. The prosecutor at that point invited the defendant to do that, to subpoena those documents, to subpoena that witness, to obtain any other materials defendant believed relevant to any sort of impeachment of Hager or, at this time since it was prior to defendant testifying, to any sort of framing of her testimony. Defense, for example, cites in support of its position the Shapiro case. And in that case, the revelation concerning the government's use of defendant's prior convictions came after defendant had testified. And so one of the central rationales underlying that decision was defendant had testified, the bail had been wrong as to defendant's testimony in reliance on a representation. In this case, defendant had not testified, Hager had not been called. The alleged reliance, defendant claims, not subpoenaing the IA files, did not occur. And finally, on this last point regarding calling Deputy Hager in rebuttal, the rationale of the government at trial, and the government submits that this rationale ultimately is born by the evidence, the rationale of the government at trial was, in light of the timing of defendant's revelations concerning this authority defense, there's no claim of authority, there's no claim of authority, there's no claim of authority, there's an internal investigation of a deputy concerning matters not at all related to this case. Oh, by the way, my defense revolves entirely around this deputy. In light of that, ultimately equity supports the government's position. Defendant should not be permitted to testify completely immunized from any sort of response by the government, because she seizes on this internal affairs matter, which the district court termed a collateral matter. So for those reasons, and because defendant had every opportunity to get the files, to subpoena anyone else from internal affairs, before she took the stand and before Hager testified, at a time when she could not have suffered any harm out of any alleged reliance, the government submits that the district court's ruling on permitting Hager to testify in rebuttal should be affirmed, and that her conviction should not be overturned in any way with respect to that issue. How about Amal and Voya sit down? On the sentencing, do you acknowledge that there is a problem? On the sentencing, yes, Your Honor. After this Court's en banc decision in Amaline 2, clearly the case should be remanded. To be — For that point. Yes. Limited remand. Correct. For the district court to re-sentence — I just didn't want you to sit before you — Yes. To re-sentence with knowledge that the guidelines are advisory. And to address counsel's other point, which was on the public authority jury instructions, two things, briefly. First, with respect to the parameters of the public authority instruction, and second, with respect to whether the requirements or threshold for that instruction were met in this case. And with respect to the parameters, the parties have some disagreement with respect to whether actual authority is required and this notice issue that defendant failed to comply with Rule 12.3. In looking back over these arguments, it seems that the best way to resolve these discrepancies is set forth in the Burroughs case. And specifically, at 881 of the Burroughs case, the Burroughs case makes a distinction between what defenses may be raised under these factual circumstances. And the Burroughs court distinguishes what it terms an innocent intent defense. Quite simply, the defendant did not have the mens rea to commit this crime. In this case, the charge was conspiracy. An element of the conspiracy was defendant joined the agreement knowing of its objects and intending to help accomplish them. So quite simply, if defendant didn't intend to further the conspiracy, if she intended to have co-conspiracy, if she intended to have murderers apprehended by law enforcement, as a quite plain factual matter, the government has not met its burden of proof on mens rea. And so that, the Burroughs court terms an innocent intent defense. Counsel, I'm not exactly sure where you're going, but it does seem to me that the defense here has used the words public authority defense at some point. That phrase is not new to this discussion, right? That phrase is new to this discussion. So that phrase has never been used in any discussion before you get to trial? Nobody's used the words public authority? Correct. Correct. And that, of course, I mean, the failure to say the term public authority would not in itself bar any defense. But the perspective of the government, and the government submits the perspective of the defense, given that no notice was given, no jury instruction was requested. I mean, unless we were to presume that defense counsel was completely asleep at the wheel, which, you know, cases on ineffective assistance suggest is not the presumption this Court should take. The government's caught in a little bit of a bind here, though, I think, aren't you? On the one hand, if all that she's put on goes to the question of her innocent intent, there isn't anything that Hager really can offer on that front. What Hager can do is come in and say, I did not give her the green light to do this. This was not part of our investigation. And the only reason that Hager is useful for that is if there's a public authority defense. So on the one hand, you want to have Hager in as a witness. That's your first argument. On the second, you want to argue that it's not error for the district court to fail to give a public authority defense. But that's the only reason really to have Hager here, isn't it? The government submits that it's not the only reason, Your Honor, for a few reasons. First of all, with respect to defendant's arguments, and the Court asks whether the government submits that the factual threshold to even raise a public authority defense is met. And the government submits it is not. Defendant's testimony was far less than the defendant in Byrne. Specifically, in defendant's direct examination, she testified she wanted to act as a confidential informant, and she was hoping to make more money, though no one, including Hager, told her that that was any sort of possibility. That's at Reporters' Transcript 410 and 452. And then defendant testified that she told Hager by telephone of a limited portion of the activities charged against her. That's at 409. And she admits subsequently at Reporters' Transcript 514 that Hager told her not to go forward with this deal. Now, the government could have rebutted defendant's testimony and may I conclude this argument, Your Honor? Yes, please. The government could have rebutted defendant's testimony by drawing on all of the other things in the record, the strength of the evidence of guilt, the clear evidence of her recent fabrication of these claims regarding Hager. But ultimately, and this goes back to the equity position, if defendant says I spoke to Hager twice on the telephone and the government's evidence is that never occurred, that that is, in fact, a lie, the government has a right to offer its evidence in contradiction of those statements. And that, if the Court reviews Hager's testimony in rebuttal, the testimony of Hager and the questions of the government were very, very limited. The questions went simply to those two telephone conversations with defendant. And those conversations went to not just a formal public authority defense, but they did go to her innocent intent claim, which the government concedes she made. She was offered every opportunity to present evidence in support of that claim. That claim, as opposed to the formal public authority defense, that claim was argued and submitted to the jury, and they rejected it. And so with respect to that issue, the government called Deputy Hager, because ultimately, what Deputy Hager had to say in his testimony was not, in balance with all of the other evidence in the case, was not terribly strong. What was strong, though, was... Mr. Coleman, rebuttal? A couple of quick points. I want to go back to what I started with, and the government didn't do it today, which is interesting. Why wasn't Hager on the witness list? And the government says, oh, the defendant didn't give notice, the defendant didn't give notice. Well, the government didn't give notice. If Hager had been put on that witness list... Okay, well, let's back up. I want to make sure I've got this chronology right. I've got the January 7th letter sitting in front of me. The government does not intend in calling him as a witness at trial with a disclosure that Hager is under investigation. So you are now on notice, the defense is now on notice that, number one, that Hager's in some internal trouble, there's some internal controversy over his conduct at the police force, and number two, the government does not intend to call him as a witness. Now, this is addressed to six defendants. Mr. Mayer, of course, can only be one of those. And it is not until the following week, one week later, January 13th, is that right? That's the first appearance after that date. That there is any indication from you that you intend to call Hager as a witness. Correct. Now, a sense is that, however, the government does not intend on calling him as a witness at trial. I can't say that's a terribly powerful stipulation not to call him under any circumstances. It doesn't say in its case in chief, but it also doesn't say, you know, we stipulate not to call Hager. Well, there's several responses. Number one is, I'll get to the factual issues, but the first one is the legal issue. The government, I think they conceded that they weren't very clear, and they have the burden to be clear under this Court's case law. So your Honor's saying, well, it's not all that clear. The bottom line is, it's their burden. Mr. Coleman, the record shows it was not unambiguous, and there's a great deal of difference between unambiguous and not all that clear, if somebody's got to split hairs. Do you understand? I understand what you're saying. It was not unambiguous when you say we're not calling him, but it doesn't say, go ahead, you make your argument, but I don't want you to waste your time. I'm afraid you might be on that point. That goes against the government. The Court has to construe it against the government under Shapiro and Lubin and in our favor. But that's point number one. But it actually isn't. It's clear that they're not going to call him at all. This is not a bargain for it. This is just simply an advice that we're giving you. We're going to give you disclosure about Hager. We're also letting you know that if you're thinking about going and spending a lot of time reading these records, we may be able to save you some time because we don't intend to call him. If you don't intend to call him, then there's no reason to go spend the time getting the records. Now, one week later, you come back and say, well, we're going to offer a public authority defense, and all of a sudden after that, the government does come forward and say, you know, if they're going to offer a public authority defense, we're going to call Hager. We won't call him in our case in chief, but we do intend to call him. Now, why isn't that? That's not what they said, though, Your Honor. On the January 13th court appearance, on page 42 of the excerpt of the record, the defense attorney gives notice that Ms. Baer was acting as an informant and, quote, the whole theory of the defense on this case is based on my client's conversation with this particular detective. That's at ER 42. The next page, ER 43, the prosecutor responds. So now they have noticed about the public authority defense and they have noticed that the whole defense is based on Ms. Baer's conversations with Hager. In response, the prosecutor, the government does not plan on calling him as a witness in our case, so I'm not sure what impeachment counsel is talking about because he's not going to be called as a witness. Yeah. That goes on on the 13th. Then, two weeks later, on the January 27th, the defense lawyer says at the beginning of the hearing, the very first thing, I was going to look into Deputy Hager's termination from the Sheriff's Department. I was not able to get that information. I have to go through the process of subpoena, and that is going to take some time. However, I spoke with U.S. Attorney Ms. Wright today, and since we received a memo from the U.S. Attorney's Office that the government is not going to be called Deputy Hager as a witness, and if this is put on the record, we would not be needed to pursue this avenue of investigating the reasons of taking a look at those nine volumes of records at the Sheriff's Department pertaining to Deputy Hager's termination. What page? That's at ER 53 to 54. Okay. He puts on the record the stipulation. Nobody from the prosecution says, well, hold on, wait a second. You know, we may call him in rebuttal, so you may want to continue to pursue getting those personnel files because we may be calling him in rebuttal. But the government doesn't say, you know, Your Honor, there was one little caveat, which they have the burden under Shapiro and Lubin to do. That there is a limitation on that stipulation. The government does none of that. Then the government does not put Hager on its witness list, although if they had reserved the right to call him in rebuttal, they had an obligation to put him on the witness list. And the government complains about lack of notice. But you know what? This whole problem could have been resolved if they had put Hager on the witness list, because if Hager was on the witness list, this issue could have been resolved before the trial started. We could have said, whoa, hold on, why is Hager on the witness list? We thought he wasn't going to be called, and this whole issue could have been resolved. But the government never put him on the witness list because they never intended on calling him, period. And they haven't today. They didn't in their briefs. They didn't today come up and tell you why he wasn't on that witness list. And they know they have an obligation to put him on that witness list if they intend to call him in their case in chief, I mean, in their rebuttal case. I mean, that's clear. Thank you, counsel. Thank you. And we thank both counsel in Behr. And that case will be submitted.
judges: Farris, Thompson, Bybee